## Case No. 15,894.

### UNITED STATES v. NOAH.

[1 Paine, 368.] [1]

Circuit Court, S. D. New York. April Term, 1825.

SHERIFF — ESCAPE OF DEBTOR — TAKING BOND — ASSIGNMENT OF BOND—SURRENDER BY SURETY—PROCESS.

1. Under the act of congress of 6th January, 1800 [2 Stat. 4], the sheriff of a county is bound to take a bond for the limits, as provided by the state laws, from a prisoner confined on process from the courts of the United States, and false imprisonment would lie on his refusal.

2. Such a bond has in all respects the same incidents and the like legal effect with a bond taken under the state laws.

3. It is assignable, and an assignment discharges the sheriff from liability for a subsequent escape.

4. The United States are expressly named in the act, and bound by it, and an assignment of a bond to them when they are plaintiffs, is valid.

5. The secretary of the treasury having accepted such an assignment, the court presumed that he was authorized, and held the plaintiffs bound by his acceptance.

6. The term "process," in the act, includes executions as well as mesne process.

7. After a prisoner has been enlarged upon a limit bond, the sheriff can confine him again only on the bail's becoming insufficient. He cannot accept a surrender of him—certainly not after an assignment of the bond.

Error to the district court of the United States for the Southern district of New-York.

The plaintiffs brought an action of debt in the court below against the defendant [M. M. Noah] as sheriff of the city and county of New-York, for the escape of one Joseph Wilson, a prisoner committed to his custody on a capias ad satisfaciendum, at the suit of the plaintiffs. At the trial it appeared that the plaintiffs on the 4th of May, 1819, issued a ca. sa. on a judgment against Wilson, directed to the marshal of the district, on which he was taken, and afterwards delivered over under the act of congress to the sheriff of the city and county of New-York. The defendant on coming into office received the prisoner from his predecessor, and on the 10th of April, 1821, enlarged the prisoner upon a bond for the limits, which bond was afterwards assigned under the statute of the state to the plaintiffs, and the assignment accepted by the secretary of the treasury through the district attorney. After the assignment of the bond, the surety offered to surrender the prisoner, and demanded that the bond should be cancelled, both which were refused by the defendant; and subsequently, on the 28th day of November, 1822, the prisoner escaped.

R. Tillotson, U. S. Dist. Atty.

E. W. King, for defendant.

THOMPSON, Circuit Justice. This case comes up on a writ of error to the district court of the United States for the Southern district of New-York, on a judgment in favour of the defendant in error. The suit in the court below, was an action of debt, against the defendant as sheriff of the city and county of New-York, for the escape of one Joseph Wilson, a prisoner committed to his custody on a capias ad satisfaciendum, at the suit of the United States. Wilson, after his commitment, was not permitted to go at large, nor did the alleged escape take

---

[1] [Reported by Elijah Paine, Jr., Esq.]

place, until he had duly entered into bond for the jail liberties pursuant to the law of the state of New-York; and the only questions which arise here are, whether the sheriff was authorized to take such bond and set the prisoner at liberty, and whether such bond, having been assigned to the plaintiffs, an action can be sustained against the sheriff for the escape.

Congress, by a resolution of the 23d of September, 1789, recommended to the legislatures of the several states, to pass laws making it the duty of the keepers of their jails to receive and safe keep therein, all prisoners committed under the authority of the United States, until they should be discharged by due course of the laws thereof, under the like penalties, as in the case of prisoners committed under the authority of such states respectively. The state of New-York, in 1801 (1 Laws N. Y. 208, K. and R. revision), passed a law making it the duty of the sheriffs of the several cities and counties of the state, to receive into their respective jails, and safely keep, all prisoners who shall be committed to the same, by virtue of any process to be issued under the authority of the United States; and in case any prisoner should escape out of the custody of any sheriff or keeper to whom such prisoner might be committed, such sheriff or keeper is made liable to the like actions and penalties, as he would have been, had such prisoner been committed by virtue of any process issuing under the authority of the state. By an act of congress passed the 6th of January, 1800 (3 Laws [Bior. &. D.] 301 [2 Stat. 4]) it is provided "that persons imprisoned on process issuing from any court of the United States, as well at the suit of the United States, as at the suit of any person or persons in civil actions, shall be entitled to like privileges of the yards or limits of the respective jails, as persons confined in like cases on process from the courts of the respective states are entitled to, and under the like regulations and restrictions."

These laws and the resolution of congress are in pari materia, and to be construed together. The object of congress was to obtain permission from the respective states, to have the use of their jails for the safekeeping of prisoners committed under process from the courts of the United States. This state granted this permission, and congress adopted the state laws as to the privileges of the yards and limits of the jails, to be allowed to such prisoners. Under the act of congress, Wilson had a right to demand of the sheriff to be admitted to the privilege of the limits in the same manner as if he had been committed on process from a state court, and we must look to the state law to ascertain what that right was; and by that law (1 Rev. Laws, 429) it is expressly made the duty of the sheriff, to permit any prisoner who shall be in custody on civil process only, to go at large within the limits of the jail liberties, provided he gives a bond with sufficient sureties, in double the amount of the sum for which he is confined; conditioned to remain a true and faithful prisoner, and not to escape or go without the limits of the liberties of the jail until discharged by due course of law. Such bond was duly made and delivered to the sheriff; and he no longer had any authority over the person of Wilson, to prevent his going at large wherever he pleased. The sheriff however is not exonerated from an action for the escape, should the prisoner go without the limits, and he must look to his bond for indemnity. Such bonds however are made assignable, and it is made the duty of the sheriff, upon the request of the party at whose suit the prisoner was confined, to assign the bond to such party who is authorized to bring a suit thereon as assignee of the sheriff. If the party does not choose to take an assignment of the bond, but bring an action against the sheriff for the escape, the court where the suit is prosecuted is authorized to stay the proceedings, until the sheriff shall have had a reasonable time to prosecute the bond. The bond in the present case was duly assigned to the plaintiffs, and the assignment accepted by the district attorney of the United States for the Southern district of New-York, he being authorized so to do by the secretary of the treasury, and the escape for which the sheriff was prosecuted took place after such assignment and acceptance.

It is not pretended on the part of the plaintiffs that in the state courts, under like circumstances, an action could be sustained by a private person, against the sheriff for the escape. But it is contended: 1. That the laws of the United States do not authorize the taking of bonds for the privilege of jail liberties. 2. That the sheriff was bound to accept the prisoner Wilson, when offered to be surrendered, and by refusing so to do, made himself liable for the subsequent escape.

Neither of these positions appears to me tenable. The state laws on this subject would not be obligatory upon the courts of the United States, unless such laws had been adopted by the United States; but I think they have been so adopted. It cannot be necessary where the laws of the United States adopt and sanction any state law or practice, to incorporate the detailed provisions of such law or practice; a general reference thereto is sufficient. The act of congress of the 6th of January, 1800, is very general in its provisions, and seems obviously intended to adopt the state law in all respects, so as to place prisoners confined under process from the courts of the United States, on the same footing with those confined on process from the state courts. The words of the act are very broad—"shall be entitled to like privileges of the yards or limits." Prisoners under

United States process have by the express provision of this act a right to demand the liberty of the limits. And what is the sheriff to do? Would it not be false imprisonment in him to refuse this liberty? The act does not to be sure by detailed provisions point out the duty of the sheriff in such case, but refers him to the state laws to ascertain what he is to do; and declares that the privilege is to be granted, "under the like regulations and restrictions" as to prisoners confined in like cases on process from the state courts; and that, as has been already shown, is to admit the prisoner to the privilege of the limits of the jail on his giving the bond and sureties as directed by the statute, which bond must have the same legal effect, as in like cases of prisoners under state process. Any other interpretation would fall short of what was obviously the intention of congress. So long as the state jails were to be used for the United States' prisoners under United States process, it was highly fit and proper they should be dealt with as prisoners under state process. The state officers would then know and understand their duty, and not be likely through ignorance of the law to expose themselves to penalties and consequences not understood. And the law of this state subjects the sheriff in case of escape to the like actions and penalties, as he would have been subject to had such prisoner been committed by virtue of process under the authority of the state. The whole duty of the officer is imposed by the state law, and he is entitled to the protection of that law for his indemnity. No law of the United States could compel him to receive a prisoner arrested under process from the courts of the United States. It was by virtue of the state law that Wilson was received in custody; if not, he was received without authority; and the plaintiffs must look to their own officer, the marshal, for the escape: but no such consequence is involved in the case. The law of the state made it the duty of the sheriff to receive Wilson into the jail of New-York; and the United States law, not only authorized, but made it his duty to admit the prisoner to the privileges of the jail limits, and under the like regulations and restrictions as prisoners confined on process from the state courts are admitted. This was by taking bond with sureties as has been done in this case, and all the other provisions attached to such bond follow of course. It becomes assignable at the request of the party plaintiff in the suit. The act of congress of the 6th of January, 1800, extends in terms to prisoners confined on process issuing from courts of the United States, as well at the suit of the United States as other persons in civil actions, and the law of this state makes the bond assignable to the party in the suit. The United States are the plaintiffs, and the assignment to them is no doubt valid. If they are competent to bring a civil suit, the cause of action must be vested in them, and they are as competent to take a bond or an assignment as a natural person.

The record in the suit against Wilson is not before me, and the present case does not show what was the cause of action. It is fairly to be presumed that it was an action under the direction and control of the secretary of the treasury, or he would not have undertaken to give any authority to accept the assignment of the bond to the sheriff. The United States must necessarily act by some agent, and must be bound by the acts of their authorized agents. I must therefore assume that the assignment of the bond for the jail liberties has been accepted by the plaintiffs. The plaintiffs were not bound to take an assignment of the bond. They might have resorted to the sheriff for the escape, and left him to look to his bond for indemnity; but having voluntarily taken the assignment, they have waived their remedy against the sheriff; he is chargeable with no negligence or misconduct. There was no escape until after the bond had been assigned; and it would be the extreme of injustice to make the sheriff responsible, after the plaintiffs had taken from him all the means in his hands to indemnify himself.

It was suggested on the part of the plaintiffs in error, that the term "process" in the act of congress of the 6th of January, 1800, does not extend to executions, but is to be restricted to mesne process. For this construction however there can be no foundation. The term is broad enough to embrace all process upon which a party is imprisoned, and there is no reason why it should not be taken in this general sense; and this construction is fortified by the provision in the second section, which is applicable only to cases where the imprisonment is on execution, and the term is then qualified and called process of execution.

2. It remains only to inquire in the second place, whether the defendant, by refusing to receive Wilson in custody when offered to be surrendered by his surety, has made himself responsible for the escape, and upon this question no doubt can be entertained. The sheriff, after having taken the bond for the limits, lost all authority and control over the prisoner except in one single event, which was, if he should discover to his satisfaction, that the bail taken was insufficient; the law then authorizes him to confine the prisoner in jail, until other good and sufficient bail for the liberties be offered. The sheriff had therefore no authority to receive the prisoner or to detain him in custody, unless the bail was insufficient. Such is the plain and obvious construction of the act, and the one that has been given to it by the supreme court of this state, in the case of Sullivan v. Alexander, 19 Johns. 233. But admitting that the

surety might, in exoneration of himself surrender the principal in any case, it must be done whilst the sheriff has possession and control over the bond. In the present case the offer to surrender was after the assignment of the bond, which being made assignable by law the sheriff had parted with all his interest in, and control over it. The whole right and interest in the bond had become vested in the plaintiffs, which the sheriff could not devest by any act of his.

I am accordingly of opinion that the judgment of the court below must be affirmed.